**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ENRIQUE FLORES,

      Plaintiff,

v.                                                                             CIV 17-0987 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (*Doc. 20*) filed on April 30, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4, 7*, *8.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted in part.

**I.**     **Procedural History**

On March 8, 2013, Mr. Enrique Flores (Plaintiff) filed applications with the Social Security Administration for a period of disability and disability insurance benefits under Title II of the Social Security Act (SSA), and for Supplemental Security Income under Title XVI of the SSA. Administrative Record[1] (AR) at 10, 196-208. Plaintiff alleged a disability onset date of August 16, 2011. AR at 10, 196, 202. Disability Determination

---

[1] Document 15-1 contains the sealed Administrative Record. *See Doc. 15-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Services (DDS) determined that Plaintiff was not disabled both initially (AR at 72-91) and on reconsideration (AR at 92-119). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of his applications. AR at 135-37.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 38-71. ALJ Michelle Lindsay issued an unfavorable decision on August 3, 2016. AR at 7-30. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 190-95), which the Council denied on August 11, 2017 (AR at 1-7). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.   Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the

assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[2] ALJ Lindsay found that Plaintiff "has not engaged in substantial gainful activity since August 16, 2011 . . . ." AR at 12 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine; left rotator cuff tear, status post-surgical repair; minimal osteoarthrosis of the cervical spine; degenerative joint disease of the knees; obesity; migraine headaches; anxiety; depression; and learning disorder." AR at 13 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

---

[2] ALJ Lindsay first found that Plaintiff's "earning record shows that [he] has acquired sufficient quarters of coverage to remain insured through December 31, 2016." AR at 10, 12.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 13 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). In making her determination, ALJ Lindsay considered listings 1.02 (major dysfunction of a joint(s) (due to any cause)), 1.04 (disorders of the spine), 11.03 (epilepsy – non-convulsive epilepsy (petit mal, psychomotor, or focal)), 12.02 (organic mental disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and the listings found under 1.00 (musculoskeletal system), 3.00 (respiratory system), 4.00 (cardiovascular system), 11.00 (neurological), and 12.00 (mental disorders). AR at 13. Regarding Plaintiff's mental impairments, ALJ Lindsay first examined whether Plaintiff's mental impairments met the "paragraph B" criteria. She found that Plaintiff has mild restrictions in his activities of daily living, mild difficulties in the area of social functioning, and moderate difficulties in the area of concentration, persistence or pace. AR at 14-15. The ALJ found that Plaintiff has not experienced any episodes of decompensation of extended duration. AR at 15. The ALJ also determined that Plaintiff did not meet the "paragraph C" criteria of 12.02, 12.04, or 12.06. AR at 15.

At Step Four, the ALJ explained that while Plaintiff's "severe impairments merit some limitations, the evidence of record does not support the extent of the limitations that [he] alleges." AR at 22. Ultimately, the ALJ found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except: he can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for six hours out of an eight-hour workday, with normal breaks. He can sit for six hours out of an eight-hour workday, with normal breaks. He can

4

occasionally balance, stoop, kneel, crawl and climb ramps and stairs. He can never climb ladders, ropes or scaffolds. He is limited to only occasional overhead reaching with the non-dominant upper extremity. He must avoid more than occasional exposure to extreme cold. He must avoid unprotected heights. He is able to understand, remember and carry out simple instructions. He can maintain attention and concentration to perform simple tasks.

AR at 15-16. ALJ Lindsay found that Plaintiff "is unable to perform any past relevant work" (AR at 23), but he is able to perform the positions of cashier II, nut and bolt assembler, and cleaner/housekeeper (AR at 24). The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 16, 2011, through the date of [the ALJ's] decision." AR at 25 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in

5

disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Discussion

Plaintiff attacks the ALJ's decision on two broad fronts. He argues first that the ALJ erred in determining his RFC, and second that the ALJ failed to resolve an inconsistency in the VE testimony. *Doc. 20* at 1. Because the Court will remand based on Plaintiff's first argument, it will not consider his second argument.

### A. The Court will remand for further analysis at Step Four of the sequential evaluation.

Plaintiff raises a great number of arguments to support his contention that ALJ Lindsay erred in making the RFC determination. The Court will address them in order.

#### 1. Standing, walking, and sitting limitations.

The ALJ determined that Plaintiff is capable of standing, walking, and/or sitting for six hours out of an eight-hour workday with normal breaks. AR at 15. Plaintiff asserts that the ALJ failed to explain "how the evidence she reviewed resulted in an RFC finding that requires prolonged standing, walking, and sitting." *Doc. 20* at 12. It is clear to the

Court, however, that ALJ Lindsay relied on the opinion of Robert Redd, M.D., the state agency medical examiner who examined the record and opined on June 5, 2013, that Plaintiff was capable of standing, walking, and/or sitting for six hours out of an eight-hour workday. *See* AR at 20 (citing AR at 74-82); *see also* AR at 89-90. "State agency medical examiner Jack Bankhead, [M.D.], affirmed this residual functional capacity in 2014." AR at 20 (citing AR at 92-104); *see also* AR at 115. The ALJ gave partial weight to these opinions, but only because the state agency medical examiners put Plaintiff "at a medium exertional level and found that" Plaintiff's mental impairments were not severe, while the ALJ found that "newer evidence suggests that he is more limited than they opined." AR at 22 (citing AR at 74-82, 92-104).

On November 1, 2011, in connection with a previous worker's compensation claim, Dr. Ricardo Rubio opined that Plaintiff "had been unable to work since August 18, 2011, but that he was able to lift up to 10 pounds occasionally or up to 5 pounds frequently and occasionally walk or stand in order to carry out job duties." AR at 17 (citing AR at 341-43). The ALJ gave partial weight to Dr. Rubio's opinion because it was "not current and [Plaintiff] has been diagnosed with other conditions since [Dr. Rubio] rendered the opinion." *See* AR at 22 (citing AR at 308-346). Plaintiff complains that "the ALJ did not explain why the age of the evidence matters, especially because it is fully supported by later findings from other doctors." *Doc. 20* at 13. Plaintiff fails to point to any of these other "later findings from other doctors[,]" however, and the Court declines to locate those records for Plaintiff. Moreover, the Tenth Circuit has found that stale opinions may be problematic in social security cases. In *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012), the Tenth Circuit was troubled by "[t]he ALJ's reliance on the

7

patently stale opinion" of a physician in light of the more recent, opposing opinion of a different physician. *See id.* at 1292-93. Here, there is more recent opinion evidence from the state agency medical examiners, who opined in 2013 and 2014 that Plaintiff was capable of more than what Dr. Rubio opined. *Compare* AR at 342 (Dr. Rubio's November 2011 opinion that Plaintiff is unable to "[l]ift up to 20 pounds occasionally or up to ten pounds frequently, and either walk or stand to a significant degree,"), *with* AR at 89 & 102 (Dr. Redd's and Dr. Bankhead's 2013 and 2014 opinions that Plaintiff is able to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, and either stand and/or walk six hours in an eight-hour workday). And, as the Commissioner points out in her response, Dr. Rubio's "opinion was given just three months after Plaintiff's initial injury before he reached maximum medical improvement." *Doc. 21* at 12.

Plaintiff next argues that ALJ Lindsay erred in discounting Dr. Delahoussaye's opinion. *Doc. 20* at 13-15. In January 2014, Brian Delahoussaye, M.D., one of Plaintiff's treating physicians, opined that Plaintiff "is totally incapacitated at this time." *See* AR at 474. The ALJ gave "limited weight" to this opinion because "it lacks a function-by-function analysis of [Plaintiff's] limitations" and "appears to be largely based on [his] subjective reports." AR at 22 (citing AR at 464-538). Plaintiff asserts that the ALJ's comment about the lack of function-by-function limitations "was an attempt by the ALJ to shirk her duty, because if RFC findings are absent, 'it is [the ALJ's] job to make them.'" *Doc. 20* at 14 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)). The Court does not read ALJ Lindsay's comment regarding function-by-function limitations as an attempt to shirk her duties, but as an explanation for why she was unable to give

8

his opinion controlling weight. Dr. Delahoussaye did not opine on any specific limitations (i.e., limitations of standing, walking, sitting, lifting, etc.), but simply opined that Plaintiff is "totally incapacitated." *See* AR at 474. This opinion reads like a finding of disability, which is an issue reserved to the Commissioner. *See Flynt v. Apfel*, 208 F.3d 225, at *2 (10th Cir. 2000) ("A treating physician's opinion that his patient is disabled is not dispositive, as final responsibility for determining disability rests with the Commissioner.") (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

"The ALJ, however, 'must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled.'" *Id.* (quoting *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (internal citation omitted)). Moreover, the ALJ must weigh the treating physician's opinion "using all of the factors provided in 20 C.F.R. § 404.1527[, which include:]

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (internal quotations omitted)). In this case, the ALJ failed to either give legitimate reasons to disregard Dr. Delahoussaye's opinion or weigh the opinion using the required factors.

With respect to the first, second, and fifth factors, ALJ Lindsay noted that Plaintiff sought care from Dr. Delahoussaye, his treating provider, from late 2013 through early 2014 for back, shoulder, and right knee pain. AR at 19 (citing AR at 464-538). With respect to the third factor, the ALJ expressed confusion that despite Dr. Delahoussaye's opinion that Plaintiff was totally incapacitated, "he advised [Plaintiff] to exercise." AR at 19. As Plaintiff notes and the Commissioner does not rebut, however, advice "to exercise is consistent . . . with generally-accepted medical advice regarding lifestyle changes that can improve back pain." *Doc. 20* at 15; *see also Doc. 21*. In fact, several doctors advised Plaintiff to exercise as part of his treatment regimen. *See*, *e.g.*, AR at 552 (Dr. Davis instructing Plaintiff "to continue home exercise"); 606 (Mr. Griffiths noting that therapy includes regular exercise); 696 (Dr. Viesca encouraging "safe, low impact, supervised exercise").

The ALJ made no specific findings regarding the fourth factor, whether Dr. Delahoussaye's opinion was consistent with the medical record. The Commissioner asserts that "the ALJ provided a six-page single spaced recitation of all of the evidence she considered in reaching her findings, and was not required to repeat all of that evidence in the weighing of every medical opinion." *Doc. 21* at 14 (citing *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012)). *Endriss* is distinguishable. There, the plaintiff argued that the ALJ erred in giving scant treatment to the opinion of one of his surgeons. 506 F. App'x at 776-77. The Tenth Circuit acknowledged that the ALJ's analysis of the surgeon's opinion was not detailed, but found that the surgeon's opinion regarding the plaintiff's "functional limitations was virtually identical to the restrictions that the ALJ had just assigned 'little weight' to from" another doctor's opinion, which the

ALJ had adequately analyzed. *Id.* The Commissioner has failed to establish that the situation here is analogous to that in *Endriss*. The Court agrees with Plaintiff that ALJ Lindsay's decision is not sufficiently specific to allow judicial review as to why she rejected objective findings. Consequently, the Commissioner's statement is inapplicable where the ALJ did not make any findings about the consistency between Dr. Delahoussaye's opinion and the record as a whole.

The ALJ's decision to discount Dr. Delahoussaye's opinion, then, largely comes down to the sixth factor. Here, the ALJ noted that the opinion "appear[ed] to be largely based on [Plaintiff's] subjective reports." AR at 22. Elsewhere in her decision, ALJ Lindsay stated that while Plaintiff's "severe impairments merit some limitations, the evidence of record does not support the extent of the limitations that [he] alleges." AR at 22. But an ALJ "may not reject [a treating source's] opinion based on her own credibility judgments, speculation, or lay opinion. Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence." *Scrivner v. Berryhill*, 323 F.R.D. 663, 670 (D.N.M. 2018) (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)). ALJ Lindsay did not cite any contradictory medical evidence in her decision to give Dr. Delahoussaye's opinion limited weight. The Court finds that the ALJ's reasoning is insufficient and will remand for further analysis on this issue.

### 2. Reaching and lifting limitations.

Plaintiff next contends that the ALJ erred in finding that Plaintiff can lift 20 pounds occasionally, and in failing to include limitations on his ability to reach in front of his body. *Doc. 20* at 16. While Plaintiff cites to several records in support of his position,

there is nothing in these records to show that the ALJ's decision is not supported by substantial evidence. The Court may not reweigh the evidence and will deny Plaintiff's motion on this issue. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

### 3. Mental limitations.

Plaintiff cites to records from his counseling sessions with Jennelle Hindash, LISW, and argues that ALJ Lindsay erred in failing to include any limitations on his inability to be around other people, to handle stress, and/or to concentrate for even two hours at a time. *Doc. 20* at 17. Plaintiff attended regular individual and family counseling sessions with Ms. Hindash from November 2013 through March 2016. *See* AR at 845-961. Ms. Hindash assigned Plaintiff a Global Assessment of Functioning (GAF) score of 60 during his first appointment in November 2013. *See* AR at 951-58. In his counseling sessions, Plaintiff discussed ongoing depression, anxiety, and family stressors. *See* AR at 845-961. And as Plaintiff acknowledges in his motion, Ms. Hindash's notes largely reflect mild symptoms. *Doc. 20* at 18.

Despite Ms. Hindash's treatment notes reflecting mostly mild depression and anxiety, Plaintiff complains that the ALJ erred in giving the evidence only limited weight merely because Ms. Hindash "is not an acceptable medical source under the regulations." AR at 22; *Doc. 20* at 18. This was not, however, ALJ Lindsay's only reason for discounting Ms. Hindash's treatment records. ALJ Lindsay also discounted the evidence because "the Commissioner has declined to endorse the GAF scale for 'use in [the] Social Security and SSI disability programs' and has indicated that GAF scores have no 'direct correlation to the severity requirements [of the] mental disorders

listings.'" AR at 23 (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, at 50764, 50765 (Aug. 21, 2000)).

Plaintiff does not dispute the ALJ's statement regarding GAF scores but argues that the ALJ should have considered Ms. Hindash's "opinion regarding functionality." *See Doc. 22* at 6. Specifically, Plaintiff asserts that it was error for the ALJ to omit limitations in his abilities to be around other people, handle stress, and "concentrate for even a two-hour stretch." *Doc. 20* at 17. Yet Plaintiff does not cite to any other part of Ms. Hindash's treatment notes relevant to these limitations. Instead, Plaintiff cites to his own notes on the Social Security Administration's Function Report, which is unrelated to his counseling with Ms. Hindash. *Id.* (citing AR at 251-52). Plaintiff does not connect Ms. Hindash's treatment notes to these alleged limitations, nor can the Court find anything in Ms. Hindash's notes to support limitations in these areas. Accordingly, the Court will deny the motion on this issue.

Plaintiff, who alleged disability due in part to a learning disability (*see*, *e.g.*, AR at 74), also argues that ALJ Lindsay erred in failing to order a psychological evaluation because there was no valid IQ score in the record. *Id.* at 20. In support of this argument, Plaintiff points out that Dr. Viesca, who diagnosed Plaintiff with chronic pain syndrome, recommended that Plaintiff obtain psychological testing. *Id.* at 19-20 (citing AR at 537). Plaintiff also references his testimony that he can only read a little bit and write a few words. *Id.* at 20 (citing AR at 44-45). Additionally, in 2012, Plaintiff underwent an educational evaluation with Blanca Martinez-Rolle, Ph.D., who administered the Wechsler Abbreviated Scale of Intelligence (WASI-2) and the Woodcock-Johnson III Tests of Achievement (WJ III). *See* AR at 296-300. Dr. Martinez-Rolle reported that

according to the WASI-2, Plaintiff scored in the low average range on the Verbal Comprehension Index, the Performance Reasoning Index, and the Full Scale IQ-4, and in the average range in the Full-2 IQ.[3] *See* AR at 298. According to the WJ III test results, Plaintiff functions at approximately a second grade level (a "very low range") in reading, math, and writing. *See* AR at 299-300.

The ALJ acknowledged the above evidence but also found it relevant that Plaintiff "reported that he did paperwork, including payroll and ordering, at a previous job." AR at 22; *see also* AR at 16, 21. The ALJ also observed that Plaintiff obtained his GED, "and one can certainly not pass the GED test without being able to read." AR at 22 (citing AR at 243 – Plaintiff's resumé indicating "completed GED")). There is conflicting evidence, however, about whether Plaintiff obtained his GED – at the administrative hearing, Plaintiff denied under oath that he had obtained his GED. AR at 44.

Because the Court is remanding for further analysis of a separate issue, the Court will direct the ALJ to expressly consider whether Plaintiff's RFC requires further refinement to account for his learning disability and/or whether further psychological testing is necessary. The Court is troubled that the ALJ apparently discounted valid test results regarding Plaintiff's intellectual abilities in favor of Plaintiff's own self-reports, particularly where the ALJ found Plaintiff's self-reports less than reliable. *See* AR at 22.

---

[3] The Court notes that in the Overview of WASI-II (published 2011), the usage notes specify that "[i]n general, the WASI-II [Full Scale IQ] should not be used for legal, judicial, or quasi-legal purposes (e.g., a statutorily mandated diagnosis or determination of a disability)." Overview of WASI-II, at 1, https://images.pearsonclinical.com/images/pdf/webinar/wasi-iihandoutoct2011.pdf.

## V. Conclusion

The Court finds that this case should be remanded for the ALJ to further analyze Dr. Delahoussaye's opinion and to address Plaintiff's learning disability as described in this Opinion.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (*Doc. 20*) is **GRANTED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent